UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 18-67 WMW

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **PLEA AGREEMENT AND** |
| v. | ) | **SENTENCING STIPULATIONS** |
| | ) | |
| TERRY J. ALBURY, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America and Terry J. Albury (hereinafter referred to as "the defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement is between the defendant, represented by the undersigned, and the United States Department of Justice, represented by the undersigned. This agreement does not bind any other federal or state agency.

1.  **Charges**. The defendant agrees to plead guilty to Counts 1 and 2 of the Information, which charge him with unlawful transmission and retention of national defense information, in violation of 18 U.S.C. § 793(e).

2.  **Factual Basis**. The defendant agrees to the following facts and further agrees that, were this matter to go to trial, the United States would prove the following facts beyond a reasonable doubt:

    a.  Beginning in or about August 2012 through on or about August 28, 2017, the defendant was employed as a Special Agent of the Federal Bureau of Investigation's Minneapolis Field Office and was also assigned as an airport liaison working counterterrorism and other matters with Customs and Border

1

SCANNED
APR 1 8 2018
U.S. DISTRICT COURT ST. PAUL

Protection at the Minneapolis/St. Paul International Airport.  In connection with his employment, the defendant maintained a TOP SECRET//Sensitive Compartmented Information security clearance and had access to national defense and classified information.

b.      Pursuant to Executive Order 12958 signed on April 17, 1995, as amended by Executive Order 13292 on March 25, 2003, and Executive Order 13526 on December 29, 2009, national security information classified as "SECRET" was information owned by, produced by, produced for, and under the control of the United States government that the unauthorized disclosure of which reasonably could be expected to cause serious damage to the national security.

c.      Information classified at any level could only be lawfully accessed by persons determined by an appropriate United States government official to be eligible for access to classified information, who received a security clearance, who had signed an approved non-disclosure agreement, and who had a "need to know" the classified information.  Classified information could only be stored in an approved facility and container.

d.      The defendant received training regarding classified information, including the definitions of classified information, the levels of classification, as well as the proper handling, marking, transportation, and storage of classified materials.  The defendant received training on his duty to protect classified materials from unauthorized disclosure, which included complying with handling, transportation, and storage requirements.  The defendant knew that unauthorized removal of classified materials and transportation and storage of those materials in unauthorized locations risked disclosure and transmission of those materials, and therefore could endanger the national security of the United States and the safety of its citizens.  In particular, the defendant had been advised that unauthorized disclosure of SECRET information reasonably could be expected to cause serious damage to the national security of the United States, and that violation of rules governing the handling of classified information could result in criminal prosecution.

e.      Because the defendant held a security clearance and worked for the FBI, the United States Government granted the defendant access to sensitive government materials, including information relating to the national defense that was closely held by the government ("National Defense Information") and classified documents and materials.

2

f.     Beginning from on or about February 2016, and continuing through on or about August 29, 2017, the defendant unlawfully retained and transmitted U.S. government property, including the documents specified in the Information.

g.     On August 29, 2017, a federal search warrant was executed at the defendant's residence in Shakopee, Minnesota.  Agents found and seized approximately 58 sensitive and classified U.S. government documents involving multiple government agencies.  These documents were recovered on a thumb drive that was wrapped up in an envelope with a reporter ("Reporter A's") telephone number affixed to it.

h.     The defendant had secretly taken FBI information and information belonging to other government agencies for approximately 18 months, using a variety of means to exfiltrate the information to avoid detection, including:

      i.     cutting-and-pasting information from documents into other programs, and printing those materials so as to not leave a record of having printed a particular document; and

      ii.     accessing documents on his classified FBI computer system and taking photographs of documents on his computer screen.

i.     The defendant transmitted sensitive and classified documents containing National Defense Information to a person not entitled to receive it; to wit, Reporter A.

j.     The defendant retained documents containing National Defense Information on a number of digital storage media devices and in a number of locations at his residence.

k.     Many of the documents the defendant retained and transmitted to Reporter A, who was not authorized to receive them, bore standard markings indicating that they contained classified information of the United States, including SECRET information. The information in the classified documents included National Defense Information.

l.     The defendant was never authorized to retain these documents at his residence or to transmit them to any person not entitled to receive them, and

3

the defendant knew that he was not authorized to remove documents containing National Defense Information and classified information from secure locations, and further knew that he was not authorized to retain them at his residence, and knew that he was not authorized to transmit them to any person not authorized to receive them.

m.      The defendant engaged in the conduct described above knowingly and willfully and not by accident, mistake, or any other innocent reason.

3.      **Statutory Penalties**. The parties agree that each of Counts 1 and 2 of the Information carries potential statutory penalties of:

    a.      a maximum of 10 years' imprisonment;

    b.      a maximum supervised release term of 3 years;

    c.      a maximum fine of up to $250,000; and

    d.      a mandatory special assessment of $100.00.

4.      **Waiver of Indictment**. The defendant agrees to waive indictment by a grand jury on this charge and to consent to the filing of a criminal information. The defendant further agrees to execute a written waiver of the defendant's right to be indicted by a grand jury on this offense.

5.      **Waiver of Pretrial Motions**. The defendant understands and agrees that he has certain rights to file pre-trial motions in this case. As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file pre-trial motions in this case.

6.      **Waivers of Appeal and Collateral Attack**. The defendant understands that 18 U.S.C. § 3742 affords the defendant the right to appeal the sentence imposed in this

case. Acknowledging this right, and in exchange for the concessions made by the United States in this plea agreement, the defendant hereby waives all rights conferred by 18 U.S.C. § 3742 to appeal defendant's sentence unless defendant's sentence includes a term of imprisonment above the guideline range determined by the court. In addition, the defendant expressly waives the right to petition under 28 U.S.C. § 2255. However, the waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

7. **Revocation of Supervised Release**. The defendant understands that if he were to violate any condition of supervised release, he could be sentenced to an additional term of imprisonment up to the length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583.

8. **Guideline Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, et seq. Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guideline calculations:

  a. Base Offense Level. The parties agree that the base offense level is 24 because the offense involved SECRET documents. (USSG § 2M3.3).

5

b.   Specific Offense Characteristics. The government believes that the offense level should be increased by 2 levels because the offense involved the abuse of a position of trust.  (USSG U.S.S.G. § 3B1.3). The defense does not believe that enhancement should apply.

c.   Acceptance of Responsibility.   The government agrees to recommend that the defendant receive a 3-level reduction for acceptance of responsibility and to make any appropriate motions with the Court. However, the defendant understands and agrees that this recommendation is conditioned upon the following: (i) the defendant testifies truthfully during the change of plea and sentencing hearings, (ii) the defendant provides complete and truthful information to the Probation Office in the pre-sentence investigation, and (iii) the defendant commits no further acts inconsistent with acceptance of responsibility. (USSG § 3E1.1).

d.   Criminal History Category.   Based on information available at this time, the parties believe that the defendant's criminal history category is I.   This does not constitute a stipulation, but a belief based on an assessment of the information currently known.   The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing.

e.   Guideline Range.   If the adjusted offense level is 23, and the criminal history category is I, the Sentencing Guidelines range is 46 to 57 months of imprisonment.   If the adjusted offense level is 21, and the criminal history category is I, the Sentencing Guidelines range is 37 to 46 months of imprisonment.

f.   Fine Range.   If the adjusted offense level is 23, the fine range is $20,000.00 to $200,000.00.  (USSG § 5E1.2(c)(3)).  If the adjusted offense level is 21, the fine range is $15,000 to $150,000.

g.   Supervised Release.  The Sentencing Guidelines call for a term of supervised release of at least one but not more than three years.  (USSG § 5D1.2(a)(2)).

9. **Sentencing Recommendation and Departures**.  The parties reserve the right to make motions for departures from the applicable guideline and to oppose any such motions made by the opposing party and further reserve the right to argue for a sentence outside the applicable guideline.  Notwithstanding the foregoing, the United States agrees that it will not seek a sentence above the stipulated guideline range.  The defendant is free to advocate for a lower sentence.

10. **Discretion of the Court**.  The foregoing stipulations are binding on the parties, but do not bind the Court.  The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable guideline factors and the applicable criminal history category.  The Court may also depart from the applicable guidelines.  If the Court determines that the applicable guideline calculations or the defendant's criminal history category are different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

11. **Special Assessment**.  The Guidelines require payment of a special assessment in the amount of $100.00 for each felony count of which the defendant is convicted. USSG § 5E1.3. The defendant agrees to pay the $200.00 special assessment prior to sentencing.

7

12.   **FOIA Requests.**   The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

13.   **Complete Agreement**.   This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant.


JOHN C. DEMERS
Assistant Attorney General
For National Security,
Acting Under Authority Conferred
by 28 U.S.C. § 515

JEFFERSON B. SESSIONS III
United States Attorney General

TRACEY DOHERTY-MCCORMICK
Acting United States Attorney for
The Eastern District of Virginia


BY:   PATRICK T. MURPHY
      DAVID C. RECKER
      Trial Attorneys
      National Security Division

BY:   DANYA E. ATIYEH
      Assistant United States Attorney
      Special Attorney to the Attorney General


Date: 4/17/18

Date: 4/17/2018


Date: 4/17/18

TERRY J. ALBURY
Defendant

JANEANNE MURRAY, Esq.
Counsel for Defendant

Date: 4/17/18

JOSHUA DRATEL, Esq.
Counsel for Defendant

9